SO ORDERED.

SIGNED this 01 day of December, 2011.

_____
Randy D. Doub
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

IN RE:

BUNTING ENTERPRISES, L.L.C.,   CHAPTER 11
                               CASE NUMBER: 09-03647-8-RDD
    DEBTOR

---

JAMES B. ANGELL, Trustee        ADVERSARY PROCEEDING
                                NUMBER: 10-00290-8-RDD
    Plaintiff

    v.

JOHN BUNTING,

PINE RIDGE FOODS, L.L.C.,

    Defendants

## ORDER

Pending before the Court is the Motion for Judgment on Partial Findings (the "Motion") made by John Bunting at the trial of the adversary proceeding held on November 10, 2011 in Wilson, North Carolina.

## BACKGROUND

The adversary proceeding was initiated by James B. Angell, (the "Plaintiff"), the Chapter 11 Trustee in the associated case *In re Bunting Enterprises, L.L.C.*, No. 09-03647-8-RDD, (Bankr. E.D.N.C.). On May 5, 2009, the debtor in that case, Bunting Enterprises, L.L.C. (the "Debtor") filed a petition under Chapter 11 of the Bankruptcy Code. The Defendant's involvement in the business of the Debtor is the subject of the adversary proceeding. On November 3, 2010, the Plaintiff filed a complaint against Pine Ridge Foods, L.L.C.[1] and John Bunting (the "Defendant"), alleging the Defendant made fraudulent misrepresentations that led to the loss of property of the bankruptcy estate, breached a fiduciary duty owed to the bankruptcy estate, and was unjustly enriched by his involvement with the Debtor and the bankruptcy estate.

The Defendant is the son of Clarence B. Bunting, Jr. and nephew of Douglas L. Bunting, (the "Buntings") who each hold a fifty percent membership interest in the Debtor and a twenty-five percent membership interest in Pine Ridge Foods, L.L.C. ("Pine Ridge"). Growing and marketing of hogs was the Debtor's primary business. Pine Ridge's primary business included the slaughter of hogs and packaging of meat for sale. Because of his familial relationship to the Buntings, the Defendant became involved in both the Debtor and Pine Ridge, although he was not employed by either company and owned no interest in either company. The Debtor and Pine Ridge had an interdependent relationship in that hogs produced by the Debtor were sold to Pine Ridge for slaughter. In fact, Pine Ridge was created by the Buntings, along with Neil and Ben Strother, as a market for the hogs produced by the Debtor and various other related entities. For several months prior to the Debtor's petition and subsequent to the petition date until the time the Plaintiff was

---

[1] Pine Ridge Foods, L.L.C. failed to answer the complaint. As such, an entry of default was entered by the clerk of court on November 1, 2011. At the trial of the adversary proceeding, the Court granted the Plaintiff's Motion for Default Judgment against Pine Ridge Foods, L.L.C. in the amount of $201,257.12.

appointed as trustee in the case, the Debtor, as a debtor in possession, continued to ship hogs to Pine Ridge for slaughter. Throughout this period, Pine Ridge underwent financial difficulties and was routinely behind on payment for hogs the Debtor sold to it. Eventually, Pine Ridge was forced to dissolve its operations because of a lack of operating capital.

In the complaint, the Plaintiff alleges that the Defendant's involvement in the business of the Debtor and Pine Ridge was the cause of significant damages to the Debtor and the bankruptcy estate. Specifically, the Plaintiff alleges that the Defendant is liable to the estate for fraud because he "intentionally caused the transfer of property of the estate to Pine Ridge with the knowledge that the estate would not receive compensation for such transfers." Complaint at 4, *Angell v. Bunting, (In re Bunting Enterprises, L.L.C.)*, No. 10-00290-8-RDD (Bankr. E.D.N.C. Nov. 3, 2010). More specifically, the Plaintiff alleges that the Defendant's actions and statements prior to the Debtor's petition and after the petition date at hearings on the Debtor's use of cash collateral constituted misrepresentations of material fact. The Plaintiff claims that at the hearings, the Defendant testified that he expected the Debtor's accounts receivable to be paid in approximately thirty days with knowledge that Pine Ridge was unable to pay many of its invoices. Furthermore, the Plaintiff argues that the Defendant caused the Debtor to deliver hogs to Pine Ridge and directed Pine Ridge not to pay the Debtor's invoices. The Plaintiff argues that these actions were reasonably calculated to deceive the bankruptcy estate and did in fact deceive the estate. As a result, the bankruptcy estate suffered damages from the Debtor's transfer of the hogs for less than reasonably equivalent value.

The Plaintiff also alleges that the Defendant, because of his relationship to the Debtor, owed a fiduciary duty to the bankruptcy estate to act for the benefit of the estate. The Plaintiff claims that the Defendant breached this fiduciary duty by continuing shipments of the Debtor's hogs to Pine

Ridge while at the same time "directing Pine Ridge not to pay the invoices of the Debtor" for hogs received. Complaint at 6, *Angell v. Bunting, (In re Bunting Enterprises, L.L.C.)*, No. 10-00290-8-RDD (Bankr. E.D.N.C. Nov. 3, 2010). Furthermore, the Plaintiff claims that while the Defendant instructed Pine Ridge not to pay the Debtor's invoices, the Defendant directed Pine Ridge to continue making payments to other vendors. The Plaintiff asserts that the Defendant's breach of the duty owed to the bankruptcy estate was the result of approximately $174,945.24 in damages to the bankruptcy estate for accounts receivable never paid by Pine Ridge.

Finally, the Plaintiff alleges the Defendant was unjustly enriched as a result of the transfer of the Debtor's hogs to Pine Ridge and it is inequitable for the Defendant to retain the benefits received by those transfers.

In his answer, the Defendant denies these allegations and asserts that he was a volunteer assisting in the family businesses. The Defendant asserts that he was not paid by either the Debtor or Pine Ridge as an employee and had no ownership interest in either company. Furthermore, the Defendant asserts that his involvement in Pine Ridge was limited to a volunteer administrative capacity in that the company employed a general manager and manager to direct and oversee operations.

At the conclusion of the Plaintiff's evidence, the Defendant made a motion for judgment on partial findings pursuant to Federal Rule of Civil Procedure Rule 52(c) as applicable to adversary proceedings by Rule of Bankruptcy Procedure 7052.

## **DISCUSSION**

The Federal Rules of Bankruptcy Procedure provide that Rule 52 of the Federal Rules of Civil Procedure applies to adversary proceedings. Fed. R. Bankr. P. 7052. Rule 52(c) of the Federal Rules of Civil Procedure provides:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

Fed. R. Civ. P. 52(c).

"Under this Rule, a court assesses the evidence presented and may render judgment if the evidence is insufficient to support a claim or defense." *In re Modanlo*, 413 B.R. 262, 265 (Bankr. D.Md. 2009). Courts in the Eastern District of North Carolina have entered a judgment on partial findings when "there was no evidence that the [plaintiff's] damage" was caused by the defendant in an adversary proceeding and it was unnecessary for a defendant to present evidence. *See Apropos Holdings, L.L.C. v. Faal, (In re Faal)*, No. S-08-00088-8-AP, 2009 WL 703335, at *2 (Bankr. E.D.N.C. March 13, 2009).

In the present case, the Court finds that the Plaintiff has failed to establish by the preponderance of evidence that the Defendant's acts constituted fraud, breach of a fiduciary duty, or resulted in unjust enrichment as alleged by the Plaintiff.

**Fraud**

In North Carolina, it is generally accepted that a claim for relief for fraud must establish: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Sutton v. Driver*, 712 S.E.2d 318, 325 (N.C. Ct. App. 2011) (quoting *Forbis v. Neal*, 361 N.C. 519, 526-27, 649 S.E.2d 382, 387 (2007)).

The Court finds that the Plaintiff's evidence is insufficient to prove that the Defendant falsely represented or concealed a material fact in order to deceive the Plaintiff. The Defendant testified at the trial that he was not employed by either the Debtor or Pine Ridge at any time and that his actions

5

within the companies were solely as a volunteer in the family business of raising and marketing hogs. The Defendant testified that he routinely inquired, almost daily, about the financial ability of Pine Ridge to pay the Debtor for the hogs but was generally denied because capital restrictions at Pine Ridge required funds be paid to other suppliers, overhead costs, and payroll first in order to continue daily operations. The Defendant's testimony indicated it was mutually beneficial for the Debtor to sell hogs to Pine Ridge, despite delay in payment, because doing so allowed the Debtor to receive a higher price per hog than selling the hogs through other avenues. This is because selling directly to Pine Ridge eliminated a step in the typical marketing of the hogs, whereby a third party purchased the hogs for a lower price at auction and sold them for slaughter after marking up prices. Furthermore, the testimony of Pine Ridge employees established that the Defendant routinely asked for payment on behalf of the Debtor and that the Defendant never instructed anyone at Pine Ridge not to pay the Debtor's invoices.[2]  Thus, the Court finds that the continuation of shipments of the Debtor's hogs to Pine Ridge after the petition date was not a result of fraudulent statements or acts by the Defendant.

Finally, the Defendant testified that Pine Ridge did manage to make payments to the Debtor totaling $193,684.58 after the petition date but prior to the appointment of the Plaintiff as Trustee in the Debtor's case. The Court finds that these payments indicate Pine Ridge's good faith attempt to catch up on the Debtor's accounts receivable, despite the fact that some of the accounts were dated beyond thirty days. Further, the Plaintiff presented no evidence that the Defendant's statements at

---

[2] In order to cut costs, the administrative organization of Pine Ridge was located at Wilson Milling, L.L.C., a company owned by Clarence B. Bunting, Jr. and Douglas L. Bunting, where the Defendant was employed. Dianne Anderson, a witness for the Plaintiff and the employee at Wilson Milling, L.L.C. responsible for Pine Ridge's bookkeeping, testified that the Defendant asked several times a week if there were sufficient funds in Pine Ridge's account to pay the Debtor's invoices. In the complaint, the Plaintiff alleged that "John Bunting instructed Ms. Anderson not to issue payments to the Debtor for hogs Pine Ridge purchased from the Debtor." Complaint at 3, *Angell v. Bunting, (In re Bunting Enterprises, L.L.C.)*, No. 10-00290-8-RDD (Bankr. E.D.N.C. Nov. 3, 2010). At the trial, Ms. Anderson testified that the Defendant never instructed her not to pay the Debtor's invoices. Ms. Anderson's testimony significantly undermined the Plaintiff's claims.

6

the hearings on the Debtor's use of cash collateral were false representations or concealment of material facts sufficient to support a finding of fraud by a preponderance of the evidence.

**Breach of Fiduciary Duty**

Under North Carolina law, "[f]or a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (citing *Curl v. Key*, 311 N.C. 259, 263, 316 S.E.2d 272, 275 (1984)). A fiduciary relationship has been defined by the Supreme Court of North Carolina

> as one in which "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence . . ., [and] 'it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and *resulting domination and influence on the other*.'"

*Id*. (quoting *Abbit v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)) (quoting 25 C.J. *Fiduciary* § 9, at 1119 (1921)) (emphasis in original).

The Court finds that the Plaintiff's evidence is insufficient to prove that a fiduciary relationship existed between the Defendant and the Debtor or the Defendant and the bankruptcy estate. Therefore, because no evidence exists to prove a fiduciary relationship, there can be no breach of a fiduciary duty. The evidence presented indicates the Defendant neither held an ownership interest in the Debtor nor was employed by the Debtor. Other than alleging that the Defendant was the Debtor's "business manager," the Plaintiff offered no other evidence indicating that a fiduciary relationship existed between the Defendant and the Debtor. Complaint at 5, *Angell v. Bunting, (In re Bunting Enterprises, L.L.C.)*, No. 10-00290-8-RDD (Bankr. E.D.N.C. Nov. 3, 2010).

The Defendant's testimony established that he acted in a volunteer capacity in the Debtor's and Pine Ridge's operations and that his actions were limited to carrying out the directives of the Buntings and reconciling the accounts of the Debtor. While employment is not a necessary condition for finding

a fiduciary relationship, the Court finds no other evidence under these facts to support the existence of a fiduciary relationship. Furthermore, the Defendant testified that he was not responsible for placing orders for hogs from Pine Ridge to the Debtor. The Defendant stated that while he did relay orders for hogs from Pine Ridge to the Debtor, he was merely communicating the amounts required between the two parties because the managers at Pine Ridge were more familiar with him than the employees of the Debtor. Because the Plaintiff presented no evidence to suggest that the Defendant possessed a "special confidence" in relation to the Debtor or the bankruptcy estate, there is insufficient evidence to prove a breach of fiduciary duty occurred by a preponderance of the evidence.

The Court notes that the Plaintiff did present evidence at the trial indicating that employees of Pine Ridge and Wilson Milling, L.L.C. were under the impression that the Defendant was either an owner of Pine Ridge or in a supervisory position.[3] However, these impressions alone are insufficient evidence as to the existence of a fiduciary relationship as they do not involve the kind of "special confidence" the Supreme Court of North Carolina requires for a finding of a fiduciary relationship.

Furthermore, even if a fiduciary relationship did exist between the Defendant and the Debtor and the bankruptcy estate, no evidence suggests that the Defendant breached a duty imposed by such a relationship. The Court finds no evidence indicating that the Defendant instructed any employee of Pine Ridge not to pay the invoices of the Debtor.[4] Additionally, no evidence presented by the Plaintiff suggests that the Defendant controlled the shipment of hogs from the Debtor to Pine Ridge.

---

[3] The Court refers to the testimony of Daniel Byrd, who testified for the Plaintiff that he believed the Defendant held an ownership interest in Pine Ridge, and Dianne Anderson, who testified that the Defendant was her supervisor in relation to Pine Ridge matters.

[4] Diane Anderson, a witness for the Plaintiff, testified that John Bunting never told her not to pay a Bunting Enterprises, L.L.C. invoice, but that Bunting was continuously asking if funds were available to pay Bunting Enterprises, L.L.C. Neil Strother, a witness for the Plaintiff, testified that in his opinion, John Bunting would not take any action to harm Bunting Enterprises, L.L.C.

**Unjust Enrichment**

The Plaintiff asserts both the Defendant and Pine Ridge are liable under a claim of unjust enrichment. To establish a claim for unjust enrichment,

> 'a party must have conferred a benefit on the other party. The benefit . . . must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances. The benefit must not be gratuitous and it must be measurable.'

*Health Mgmt. Assoc., Inc. v. Yerby*, 715 S.E.2d 513, 519 (N.C. Ct. App. 2011) (quoting *Booe v. Shadrick*, 369 S.E.2d 544, 556 (N.C. 1998)). Recovery for "unjust enrichment is appropriate where the 'property or benefits were conferred on a defendant under circumstances which give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received, but [for which] the defendant . . . failed to make restitution.'" *Beaman v. Barth (In re Amerlink, LTD.)*, No. 10-00164-8-JRL, at 11-12 (Bankr. E.D.N.C. March 18, 2011) (quoting *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. Ct. App. 390, 417, 537 S.E.2d 248, 266 (2000)(citation omitted)).

The Court finds by the preponderance of the evidence that the Defendant received no benefit from the Debtor or the bankruptcy estate as a result of the transactions between the Debtor and Pine Ridge. Therefore, as there is no evidence of a benefit conferred, any claim for unjust enrichment against the Defendant fails.

The Court finds that the Plaintiff has been fully heard on the issues and having failed to present sufficient evidence to support the claims against the Defendant, it is unnecessary for the Defendant's evidence to be heard. Therefore, because the Plaintiff has failed to produce proof beyond a preponderance of the evidence the Defendant committed fraud, breached a fiduciary duty, or received an unjust enrichment, the Motion is **GRANTED.** Judgment shall be entered for the

9

Defendant and the Plaintiff shall have and recover nothing from the Defendant. The Clerk of Court is directed to enter judgment in favor of the Defendant, John Bunting.

**SO ORDERED.**

**END OF DOCUMENT**